**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MON RIVER TOWING, INC.,       )
         )
         Plaintiff,     )
         )
     v.      )     Civil Action No. 06-1499
         )     Judge Nora Barry Fischer
INDUSTRY TERMINAL AND      )
SALVAGE COMPANY,        )
         )
         Defendant.   )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiff Mon River Towing, Inc., (hereinafter "MRT" or "Plaintiff"), brought the instant civil

action against Defendant Industrial Terminal and Salvage Company (hereinafter "ITS" or

"Defendant") by way of complaint on November 9, 2006, alleging negligence in Count I, lost profits

and uncovered costs in Count II, indemnification in Count III, and pre-judgment interest and attorney

fees in Count IV. This Memorandum Opinion addresses two motions presently before the Court,

Plaintiff's Motion for Partial Summary Judgment (Docket No. 33) and Defendant's Motion for

Summary Judgment (Docket No. 34). For the reasons outlined herein, Plaintiff's Motion for Partial

Summary Judgment is DENIED; Defendant's Motion for Summary Judgment is GRANTED, in part,

and DENIED, in part.

### II.    FACTUAL BACKGROUND

The underlying facts giving rise to this litigation are fairly straightforward and generally

undisputed.[1]  By way of background, MRT is a Pennsylvania company engaged in the business of

letting barges for hire.  ITS is a Pennsylvania company operating a marine terminaling and barge

fleeting facility below the Montgomery Lock and Dam on the Ohio River.  In late 2003 or early

2004, MRT was awarded two contracts for the transportation of coal to power plants.  In order to

meet its obligations under the contract, MRT began expanding its fleet and, among other things,

entered into a Charter Agreement for delivery of 104 brand new jumbo barges during 2004-2005.

The first 13 barges completed, numbered sequentially MRT 416-MRT 428, took their first load

under a voyage charter to TECO Barge Lines out of the shipyard in Caruthersville, Missouri, and

began their maiden voyage north to Pittsburgh, Pennsylvania.[2]

On or about May 20, 2004, these 13 barges were accepted into the fleet operated by ITS.

(Docket No. 51 at ¶2).  ITS directed that the barges be placed at the Shell Chemical Dock on the

Ohio River. (*Id*. at ¶4).  The Shell Chemical Dock consisted of a large river cell and 6 smaller cells

---

[1]

On October 10, 2008, this Court ordered Plaintiff to file a Concise Statement of Material Facts in support of its Motion for Summary Judgment in accordance with Local Rule 56.1(B). (Docket No. 45).  Thereafter, on October 20, 2008, Plaintiff filed a Concise Statement of Material Facts in support of its motion.  (Docket No. 51).  However, as noted by Defendant in its Objection and Response to Plaintiff's Concise State of Material Facts (Docket No. 52), paragraphs 29-63 of Plaintiff's statement pertain to the issue of damages, while Plaintiff's motion focused solely on the issues of liability and prejudgment interest.  Local Rule 56.1(B) requires the moving party to file a "concise statement setting forth the facts essential for the court to decide **the motion for summary judgment**, which the moving party contends are undisputed and material, including any facts which for purposes of the summary judgment motion only are assumed to be true."  W.D. Pa. L.R. 56.1(B)(emphasis added).  Thus, as paragraphs 29-63 are beyond the scope of Plaintiff's motion, the Court did not consider said facts in ruling on either motion for summary judgment.

[2]

The facts contained in this paragraph are, for some reason, generally not found in either party's statement of facts.  The Court has amalgamated these facts from the complaint and the parties' memoranda, and they are, for aught that appears, uncontested.

and was approximately 449 feet in length.[3] (Docket No. 33 at 3). During the time MRT's barges were fleeted with ITS, the river was expected to rise. (Docket No. 51 ¶6).

As expected, the river did rise, and, upon inspection, ITS discovered that the most down river side line securing the fleet was fouled[4] and had to be cut in order to be released. (*See generally*, Docket No. 51 ¶12 and Docket No. 52 at ¶12). To correct the fouled line, ITS determined that it was necessary to push the fleet up river to create slack in the line so it could be cut without creating a surge on the fleet. (Docket No. 51 ¶¶13-14). In order to achieve this result, ITS employed its harbor boat, the M/V Ranger, along with the assistance of the M/V Arnie S., owned by FirstEnergy Corporation, which operated a facility across the river, to move the fleet upriver. (Docket No. 51 at ¶14; Docket No. 52 at ¶14). With both harbor boats securing the fleet, the fouled line was cut away. (Docket No. 51 at ¶15). ITS then allowed the fleet to return to its natural position secured by the remaining lines, the M/V Arnie S. was released back to her fleet, and the M/V Ranger moved to the outside of her fleet to push the lower portion of the fleet in towards the cell. (Docket No. 51 ¶¶17-18). As the M/V Ranger attempted to hold the fleet against the cells so the failed line could be replaced, the head wire and remaining side lines failed and the fleet drifted across the river and collided with the Bruce Mansfield fleet. (Docket No. 51 at ¶22). The M/V Ranger was unable to recapture the fleet and, after striking the fleet across the river, the fleet broke apart and began moving downstream before running aground. (Docket No. 51 at ¶¶26-27).

---

[3]

"A river cell is a large steel cylinder embedded in the river bottom to which barges are moored. They have mooring rings at several levels to accommodate changes in river height." (Docket No. 33 at 3 (n.2)).

[4]

When a mooring line is fouled, it is at a downward angle from the barge to the river cell. (Docket No. 51 at ¶12).

Both MRT and ITS immediately hired surveyors to assess the damage to the barges. (Docket No. 51 at ¶33). Ultimately, MRT decided that the barges were to be repaired to their as-built condition, which required the use of wheelabrated steel, and that the most time and cost effective manner for effectuating the repairs was to have the barges split between two shipyards, one being Jeffboat and the other being O-Kan, both located in Ohio. (*See generally*, Docket No. 51 at ¶¶38-48; Docket No. 52 at ¶¶38-48). All or some of the barges were out of service during a period between May and September 2004.

## III. PROCEDURAL HISTORY

Plaintiff commenced the instant action by filing a complaint on November 9, 2006, and the case was assigned to Judge Thomas M. Hardiman. (Docket No. 1). Defendant answered Plaintiff's Complaint on February 5, 2007. (Docket No. 6). On April 6, 2007, the case was reassigned to the undersigned judge. The matter then proceeded through the Court's alternative dispute resolution (ADR) process,[5] particularly mediation, but said efforts proved to be unavailing.[6] The parties engaged in additional discovery, and additional attempts at mediation were unavailing.[7]

On June 13, 2008, Plaintiff filed its Motion for Partial Summary Judgment (Docket No. 33) and Defendant filed its Motion for Summary Judgment. (Docket No. 34). Both parties responded

---

[5]

Judge Hardiman was part of this district's pilot ADR program at the time the initial ADR order was entered. (*See* Docket No. 13). ADR has since become mandatory in the Western District of Pennsylvania. *See* http://coldfusion.pawd.uscourts.gov/adr/pages/ADRInfo.cfm.

[6]

*See* Docket No. 14 (June 19, 2007).

[7]

*See* Docket Nos. 19 (October 23, 2007) and 29 (May 29, 2008).

to the respective motions on July 11, 2008 (Docket Nos. 37 and 38), and filed reply briefs in support of their motions on July 18, 2008 (Docket Nos. 41 and 42).  As Plaintiff failed to file a concise statement of material facts with its motion for summary judgment, in violation of Local Rule 56.1, the Court ordered Plaintiff to file same on October 10, 2008.  (Docket No. 45).  Plaintiff eventually filed its concise statement on October 20, 2008 (Docket No. 51); and Defendant filed its response thereto on November 19, 2008.  (Docket No. 52).  Plaintiff subsequently replied to the objections raised in Defendant's response to the concise statement (Docket No. 53), and Defendant filed a sur-reply to Plaintiff's concise statement on December 3, 2008.  (Docket No. 56).  As both motions have now been fully briefed, they are ripe for disposition.

## IV.    LEGAL STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).  Pursuant to Rule 56,  the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A dispute of fact is genuine if the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 412 F.3d at 249. As to materiality, the relevant substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

"The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment." *Turner v. Leavitt*, Civ. Action No. 05-942, 2008 WL 828033, at *4 (W.D.Pa. March 25, 2008) (citing *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10 WRIGHT AND MILLER, FEDERAL PRACTICE § 2721, at 40 (2d ed.1983))); *Pollack v. City of Newark*, 147 F.Supp. 35, 39 (D.N.J.1956), *aff'd*, 248 F.2d 543 (3d Cir.1957), *cert. denied*, 355 U.S. 964, 78 S.Ct. 554, 2 L.Ed.2d 539 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir.2007). However, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers,* 142 F.3d 639, 643 n.3 (3d Cir.1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir.1994)).

## V.    DISCUSSION

A.  *Arguments Advanced by the Parties*

Plaintiff's Motion for Partial Summary Judgment requests the court to enter judgment as a matter of law on the issues of liability, prejudgment interest, costs, and fees against Defendant. Plaintiff argues that a bailment relationship existed between Plaintiff and Defendant, and, under maritime law, a presumption of negligence exists against Defendant given the property damage suffered by Plaintiff.  Plaintiff then requests that the case proceed on the sole issue of the amount of damages to be awarded.  (Docket No. 33 at 1).  Defendant counters that genuine issues of material fact exist as to Defendant's liability; prejudgment interest is inappropriate at the summary judgment stage; and that Plaintiff is premature in requesting an award of fees and costs.  (Docket No. 37 at 7-13)

In its Motion for Summary Judgment, Defendant argues that the Court should enter summary judgment in its favor because: under the doctrine of laches, the complaint was not filed within the two-year limitation period prescribed in Pennsylvania for negligence actions; Plaintiff failed to mitigate its damages; Plaintiff failed to show lost profits, loss of use, or lost earning capacity; and Plaintiff is not entitled to indemnification because no third party claims have been brought. (Docket No. 35 at 1-2).  Plaintiff counters that: because a bailment existed, the relevant statute of limitations would be that for a contract not founded upon a written instrument which is four years in Pennsylvania; that Defendant was not prejudiced by undue delay; that Plaintiff need not show a specific lost opportunity or use a specific calculation of damages in order to be awarded loss of use and lost profits damages;  and that Plaintiff did not fail to mitigate its damages.  (Docket No. 38 at 1).  The Court will address each of the parties' arguments, in turn.

B. *The Doctrine of Laches*

The threshold inquiry before the Court, therefore, is to determine whether Plaintiff's Complaint was timely under the doctrine of laches. In admiralty actions there is no governing statute of limitations. *Butler v. Dravo Corp., Keystone Div.*, 310 F.Supp. 1265, 1266 (W.D.Pa. 1970) (citing *Finley v. United States*, 244 F.2d 125, 128 (3d Cir. 1957); *Kane v. U.S.S.R.*, 189 F.2d 303, 305 (3d Cir. 1951) (*en banc*)). Rather, the equitable doctrine of laches is available as a defense to stale demands in suits brought in admiralty. *Pierre v. Hess Oil Virgin Islands Corp.*, 624 F.2d 445, 450 (3d Cir. 1980). "The law is well settled that, in the absence of a showing of such 'exceptional circumstances,' a court of admiralty, in determining the question of laches, will be governed, 'by analogy,' by the state statute of limitations covering actions of the nature disclosed by the libel." *Westfall Larson & Co. v Allman-Hubble Tug Boat Co.*, 73 F.2d 200, 203 (9th Cir. 1934). The analogous statute of limitations is the statutory period of time within which the forum state would require a corresponding civil action at law to be commenced by the plaintiff. *Carlantonio v. Mariehamns Rederi A/S Gustaf Erikson*, 294 F.Supp. 874, 875 (E.D.Pa. 1969); *Smigiel v. Compagnie de Transports Oceaniques*, 185 F.Supp. 328, 329 (E.D.Pa. 1960). Laches depends on the equities of a case, and not simply the passage of time, and thus, the state statute of limitations serves as an analogy and not a rule. *Burke v. Gateway Clipper*, 441 F.2d 946, 949 (3d Cir. 1971); *Carmalt v. G.M.A.C.*, 302 F.2d 589, 590 (3d Cir. 1962); *Kane*, 189 F.2d at 305-306; *Loverich v. Warner Co.*, 118 F.2d 690 (3d Cir. 1941) *cert. denied*, 313 U.S. 577 (1941). "It is well settled . . . that laches as a defense to an admiralty suit is not to be measured by strict application of statutes of limitations; instead, the rule is that 'the delay that will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.'" *Czaplicki v. The Hoegh Silvercloud*, 351 U.S.

525, 533 (1956) (quoting *The Key City*, 81 U.S. 653, 660 (1871)).

To bar a suit by invoking the defense of laches, ordinarily the Court must find both inexcusable delay in the institution of the suit and prejudice to the defendant resulting from the delay. *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir. 1974); *Burke*, 441 F.2d at 949; *Kane*, 189 F.2d at 305. Inexcusable delay, without a showing of prejudice, will bar the defense. *Gruca*, 495 F.2d at 1260. The length of the delay does not determine the outcome, but it does control the burden of proof. *Id.* at 1259. The defendant bears the burden of proving both elements of laches as an affirmative defense when the analogous statute of limitations has not expired. *Id.* at 1259 n.8; *Highland Tank & Mfg. Co. v. PS Intern., Inc.*, 393 F.Supp.2d 348, 357 (W.D.Pa. 2005) (citing *Connor v. Highway Truck Drivers and Helpers, Local 107*, 378 F.Supp. 1069, 1073 (E.D.Pa. 1974)). When the statute has run, the defendant enjoys a presumption of prejudicial delay. *Highland Tank*, 393 F.Supp.2d at 357 (citing *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005)); *Baczor v. Atlantic Richfield, Co.*, 424 F.Supp. 1370, 1379 (E.D.Pa. 1976); *Smith v. B.P. Tanker Co., LTD*, 395 F.Supp. 582, 587 n.1 (E.D.Pa. 1975) (citing *Gruca*, 495 F.2d at 1259).

### i. Analogous Pennsylvania Statute of Limitations

Defendant argues that the most analogous statute of limitations for purposes of the laches analysis is the Pennsylvania two-year statute of limitations for property damage based on negligence claims, 42 Pa.C.S. § 5524.[8] Defendant's position is predicated upon Plaintiff's own characterization

---

[8]

§ 5524. Two year limitation:

The following actions and proceedings must be commenced within two years:

of its claims, observing that Count One of Plaintiff's Complaint is denominated "Negligence" and

avers that Defendant's negligence was the direct and proximate cause of the harm suffered by

Plaintiff.[9]  (*See* Docket No. 1 at 2).  Defendant also points to the fact that the Civil Cover Sheet filed

contemporaneously with the complaint in commencing this lawsuit twice indicates that the cause of

action is a personal property damage tort case. (*See* Docket No. 1-2 at 2).  Defendant urges that

Plaintiff cannot belatedly recharacterize its claim under a contract theory in an attempt to avoid the

doctrine of laches from operating to foreclose its claims.  (Docket No. 42 at 1).

In response, Plaintiff avers that the Pennsylvania four-year statute of limitations governing

actions arising from an express contract not founded upon an instrument in writing, 42 Pa.C.S. §

5525,[10] should be applied for purposes of the laches analysis.[11]  (Docket No. 38 at 2).  Plaintiff

---

. . .

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa.C.S.A. § 5524 (2004).

[9]
The Court notes that Plaintiff's Complaint predates the United States Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Thus, at the time the Complaint was filed, Plaintiff was only required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The Court further notes that while Defendant now asserts a statute of limitations defense, it did not file a motion to dismiss, nor did it file a motion for judgment on the pleadings, on such basis or any other.

[10]
§ 5525.  Four year limitation:

(a) General rule.  Except as provided for in subsection (b), the following actions and proceedings must be commenced within four years:

supports this posture by maintaining that Plaintiff's delivery and Defendant's acceptance of the barges into Defendant's facility created a bailment relationship between the parties. (*Id.*).

Under Pennsylvania law, "[a] bailment is a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it." *Price v. Brown*, 680 A.2d 1149, 1151 (Pa. 1996) (quoting *Smalich v. Westfall*,

---

> . . .
>
> (3) An action upon an express contract not founded upon an instrument in writing.
>
> . . .

42 Pa.C.S. § 5525 (2004).

[11]

As an alternative, Plaintiff argues that admiralty cases proceeding under a tort theory are subject to the three-year statute of limitations for maritime tort cases under 46 U.S.C. § 763(a). That statute provides that:

> [A] suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued.

*Id.*

Some courts have held that this limitations period applies to all maritime torts. *See, e.g., Friel v. Cessna Aircraft Co.*, 751 F.2d 1037, 1038 (9th Cir. 1985). Other courts have found that the three year limitations period applies to maritime tort actions not already governed by a specific statute of limitations. *See, e.g., Peoples v. Croisieres Paquet*, 1988 AMC 2229, 1988 WL 143414 (D.Or. 1988) (quoting *Catterson v. Paquet Cruises, Inc.*, 513 F.Supp. 645, 646 (S.D.N.Y. 1981)). However, this approach has not been recognized by the United States Court of Appeals for the Third Circuit. Furthermore, the basic principle of statutory construction is the plain meaning rule. "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and, if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). It is clear that 46 U.S.C. § 763(a) is meant to apply only to maritime torts for the recovery of damages for personal injury or death, or both. The statute does not state that it applies to maritime torts causing property damage, or any other maritime tort. For this reason, the Court finds that the three-year statute of limitations for maritime torts causing personal injury or death has no application in this case.

269 A.2d 476, 480 (Pa. 1970) (citation omitted)).  It is well established that the parties to a bailment enjoy a contractual relationship. *Com. Department of Corrections v. Board of Claims*, 580 A.2d 923, 926 (Pa.Cmwlth. 1990) (citing *Todd v. Figley*, 7 Watts 542, 543 (1838) ("every species of bailment is founded upon a contract, either expressed or implied . . .")); *Smalich*, 269 A.2d at 480; *Lion Yarn Co. v. Flock*, 36 A.2d 246, 248 (Pa.Super. 1941).  Under every bailment agreement, there exists an implied covenant which provides that the bailee owes a duty of care to the bailor that is governed by the law of negligence, and includes prevention of loss or damage to the bailed property. *Beechwoods Flying Service, Inc. v. Al Hamilton Contracting Corp.*, 464 A.2d 440, 445 n.5 (Pa.Super. 1983).

Defendant disputes that, as a matter of law, a bailment relationship was established between the parties. (Docket No. 56 at 1).  This contention, however, is belied by Defendant's own admissions in its answer to Plaintiff's Complaint.  Specifically, Defendant admitted that Plaintiff delivered, and Defendant accepted the delivery of, the thirteen subject barges into its facility situated on the Ohio River. (Docket No. 6 at 1-3).[12]  Furthermore, in his deposition testimony, the Vice President of ITS, Lynn M. Bussato, admitted that Defendant accepted the barges in question into its fleeting facility and stored them from May 20, 2004 to May 22, 2004.  (Docket No. 46-2 at 4-6).  This scenario fits squarely within the definition of bailment under Pennsylvania law, being "a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it." *Smalich*, 269 A.2d at

---

[12]    Indeed, Plaintiff pled and Defendant admitted that Defendant "accepted the delivery" of Plaintiff's barges.  (Docket No. 1 at 2; Docket No. 6 at 3).

480.  Indeed, the facts establishing a bailment relationship are not in dispute.

It is true, as Defendant argues, that the law has allowed for a choice of remedies when a bailee has failed to return the bailed property to the bailor, allowing for an action to be brought in contract for breach of the bailment agreement or an action in tort. 8 C.J.S. BAILMENTS § 124 (2008) ("As a general rule, a bailor has the right to choose between different remedies where his or her bailee has breached the bailment contract . . . Where a bailee's acts or conduct constitutes both a breach of the bailment contract and a tort, the bailor may waive the tort and sue the bailee for breach of contract, or abandon the contract and sue in tort.").  In this regard, Defendant notes that Plaintiff indicated on its Civil Cover Sheet twice that this action was to proceed under tort theory, and Count I of Plaintiff's Complaint is titled "Negligence."  However, the Court is cognizant that Pennsylvania law looks to the nature of the damages invoked rather than the pleadings to determine the cause of action for purposes of assigning a statute of limitations for the cause.[13]  Therefore, Plaintiff's checkmarks on the Civil Cover Sheet[14] and election to entitle Count I of its complaint "Negligence" are insufficient to establish that Plaintiff elected to proceed under a tort theory.  Moreover, Plaintiff

---

[13]
    The law is clear that the pleadings do not provide the proper basis upon which to decide the question of statute of limitations.  "In Pennsylvania, the nature of the relief requested, rather than the form of the pleading, determines which statute of limitations controls a particular action." *Spack*, 510 A.2d at 353 (citing *Murray*, 490 A.2d 839; *Sykes v. Southeastern Pennsylvania Transportation Authority*, 310 A.2d 277 (Pa.Super. 1973)).  Here, Plaintiff seeks to remedy defects in performance, claiming that pursuant to the bailment, Plaintiff is entitled to "as-built" repairs, given the fact that the barges were brand new and on their maiden voyage.  As a consequence of the damage to the barges, Plaintiff also claims consequential damages, including lost profits.

[14]
    Defendant's reliance on the Civil Cover Sheet in this matter is misplaced in that in all maritime cases involving the damage of property, a plaintiff must check the box that includes "[a]ll personal and property damage tort cases, including maritime, FELA, Jones Act, Motor vehicle, products liability, assault, defamation, malicious prosecution, and false arrest."  (Docket No. 1-2).

has argued, and apparently elected, to proceed in contract, and not in tort, which it may do. The Court is thus unpersuaded by Defendant's argument that Plaintiff's cause of action sounds in tort, alone.

Plaintiff's Complaint clearly spells out the elements of a bailment and the deposition testimony of Mr. Busatto confirms this. The Court thus concludes that Plaintiff has established a claim for breach of contract under a bailment, and therefore the most applicable statute of limitations for purposes of the laches analysis is Pennsylvania's four-year limitation for actions upon a contract not founded upon an instrument in writing, specifically 42 Pa.C.S. § 5525. As the incident giving rise to this lawsuit occurred on May 22, 2004, and Plaintiff commenced this action on November 9, 2006, the filing of Plaintiff's Complaint was timely.

## ii. Inexcusable Delay and Prejudice

Under the doctrine of laches, the defendant bears the burden of proving prejudice when the analogous statute of limitations has not expired. *Gruca*, 495 F.2d at 1259 n.8; *Highland Tank & Mfg. Co. v. PS Intern., Inc.*, 393 F.Supp.2d 348, 357 (W.D.Pa. 2005) (citing *Connor v. Highway Truck Drivers and Helpers, Local 107*, 378 F.Supp. 1069, 1073 (E.D.Pa. 1974)). Defendant alleges prejudice in that on or about January 11, 2006, Plaintiff's stock was sold to Consol Energy Sales Company. (Docket No. 42 at 2). Defendant also alleges that numerous documents it has requested from Plaintiff regarding this incident have not been produced, have been claimed to be unavailable or only partially available, and that there are conflicting representations by present and former MRT personnel as to the location and existence of the records. (*Id.*).

Plaintiff asserts that Defendant was not prejudiced by the timing of its institution of this action because Defendant had the opportunity to inspect the damaged barges within days of the

breakaway and had unlimited access to any and all facts and witnesses from the onset. (Docket No. 38 at 4-5). Plaintiff also avers that Defendant was fully engaged with Plaintiff in attempts to resolve this dispute without litigation. (*Id.*). Further, Plaintiff asserts there was open communication between the parties in the first month following the event, and subsequently, the parties continued to negotiate and discuss the issues until negotiations broke down and Plaintiff commenced this action. (*Id.*).[15]

There is a dearth of precedent for establishing inexcusable delay in a laches analysis when the analogous statute of limitations has not run. However, mindful of equity's desire for adjudicating cases on the merits, the Court is guided by decisions of the district courts within this circuit concluding that plaintiff's delay was excusable (even after the analogous statute has run) when defendant was given prompt notice of a potential claim for damage to a plaintiff's dock, *Sun Pipe Line Co. v. M/T Lotti Swann*, 1997 WL 793075 (E.D.Pa. Dec. 8, 1997), and when a defendant had prompt access to inspect the damages to plaintiff's property, *Picchi v. Summit North Marina, Inc.*, 2007 WL 1100508 (D.Del. Apr. 12, 2007).

The more determinative factor in conducting a laches analysis is prejudice to the defendant. *Gruca*, 495 F.2d 1252. In *Picchi*, the court observed:

> In *AT & T v. FN Shinnecock, et al.*, 1991 U.S.Dist. LEXIS 10070 (D.N.J. 1991) Fisher, J C.A. No. 89-5387, the defendants presented a laundry list of alleged prejudicial factors, including that the vessel had been sold twice since the incident; the crew members involved in the incident had since dispersed and the whereabouts of the captain was unknown; the records of the vessel including those concerning the incident were destroyed; and the faulty equipment (damaged cable) which allegedly

---

[15]

Furthermore, the deposition transcripts filed of record at Docket Nos. 46-49, including those of Defendant's Vice President and insurance representative, support Plaintiff's arguments.

contributed to the accident was discarded by the plaintiff or its agents. In denying the defendants' motion to dismiss and finding that none of those reasons support a claim of laches, the court noted that "[i]n a laches case, when prejudice is alleged, 'the ultimate question is one of prejudice *in fact*, governed by the time of notification of the existence of the cause o[f] action and the plaintiff's prompt prosecution of the same.'" *Id.* at 6 *quoting Hill v. Burns & Co.*, 498 F.2d 565, 569 (2d Cir. 1974) (emphasis added). In its conclusion, the court relied on the fact that the defendants received notice of the claim within five months of the accident.

*Picchi* at *6.

In *Taylor v. Crain*, 125 F.Supp. 314 (W.D.Pa. 1954) *rev'd on other grounds*, 224 F.2d 237 (3d Cir.1955), the court found that the plaintiff had sustained his burden of proving that the five-year delay in bringing suit had not prejudiced the defendant. The plaintiff established that the defendants "were on notice of [the accident which gave rise to the suit] on the day of the event, and through their insurance company, had timely opportunity to investigate the accident, review the details, and ascertain the names of witnesses." *Id.* at 317. Similarly, in *Smiegel v. Compagnie de Transports Oceaniques*, 185 F.Supp. 328, 330 (E.D.Pa 1960), the court refused to dismiss the suit on the ground of laches where it found that, although the plaintiff's four-year delay in bringing suit was inexcusable, the defendant was not prejudiced since the defendant had immediate knowledge of the plaintiff's injury, had a full opportunity to make an immediate investigation, and had in its possession a full accident report, including statements of witnesses.

In the instant matter, Defendant supports its assertion of prejudice, as stated above, by way of the sale of Plaintiff's stock, and Plaintiff's alleged failure to provide numerous documents requested by Defendant pertinent to this lawsuit. Defendant's averments, however, are merely conclusory statements and fail to show how the sale of the stock twenty months after the accident

and failure to obtain the requested documents caused prejudice to Defendant *in fact*.[16] When the action is commenced before the statute has run, the burden is on defendant to prove laches. *Gruca*, 495 F.2d at 1259, n.8. The Court finds that Defendant's proclamations fall short of establishing sufficient evidence to prove prejudice by the timing of Plaintiff's Complaint.

Because the Court finds that the most analogous statute of limitations for purposes of the laches analysis is 42 Pa.C.S.A. § 5525, allowing four years for bringing an action upon a contract not founded upon an instrument in writing, and because the Court has determined that Defendant has failed to establish inexcusable delay and prejudice resulting therefrom, the Court holds that Plaintiff's action is not barred by the doctrine of laches.

C. *Lost Profits/Uncovered Costs*

Defendant further argues that Count II of Plaintiff's Complaint advancing a claim for lost profits and uncovered costs should be dismissed because Plaintiff failed to mitigate its damages and has failed to show any lost profits, uncovered costs, lost earning capacity, or other consequential damages. (Docket No. 35 at 1-2). Specifically, Defendant contends that Plaintiff's insistence on using wheelabrated steel to repair the barges, having the barges repaired at distant shipyards, and having all thirteen barges out of service simultaneously was imprudent and exacerbated its costs. (*Id.* at 4-6). Additionally, Defendant maintains that Plaintiff must produce evidence of a specific lost

---

16

The Court notes that Plaintiff and Defendant were in contact immediately after the incident and Defendant had ample opportunity (i.e., almost twenty months) to request the documents in question prior to the stock sale. (*See* Docket No. 46-2 at 22; Docket No. 48-2 at 24-25). Furthermore, the record indicates that Defendant was represented initially by an insurance representative who could have easily made such requests at that time, and/or immediately secured counsel to make such requests. (*See* Docket No. 48-2). Moreover, Defendant had experienced prior claims, and its representatives should have been attuned to investigating and/or discovering the extent and nature of all of Plaintiff's claimed losses. (*See* 46-2 at 23).

opportunity in order to recover damages in the nature of lost profits, lost earning capacity, and other consequential damages. (*Id*. at 7-9).

Plaintiff counters that the use of wheelabrated steel was necessary to repair the barges to their as-built condition, which was proper because the damage occurred on their maiden voyage, that the use of distant shipyards was the most time and cost effective method for repairing the barges, and that the removal from service of all thirteen barges simultaneously was necessary for the maintenance of Plaintiff's upcoming contractual obligations. (Docket No. 38 at 13-19). Plaintiff further alleges that a specific lost opportunity need not be shown in order to recover consequential damages, only that the fleet was fully committed in a ready market. (*Id*. at 7). Plaintiff also argues that its damages can be calculated with reasonable certainty. (*Id*.).

As the United States Court of Appeals for the Third Circuit noted in *Scalp Level Coal Mining Co. v. New England Coal & Coke Co.*, 51 F.2d 223 (3d Cir. 1930):

> The rule of law is that where a party is entitled to the benefit of a contract and can with reasonable exertions save himself from loss arising from its breach, it is his duty to do so and he is entitled to only such damages as he could not with reasonable efforts and expense have prevented. (listing cases). Was there anything in this case to take it out of the general rule? We see nothing in the nature of this contract which makes the general rule inapplicable. The plaintiff was under the duty to use all reasonable efforts to mitigate the damages arising from the breach of the contract, and what those damages were, and whether or not with reasonable efforts they could have been mitigated wholly or in part, were questions for the determination of the jury.
>
> *Id.*

So too is the general rule applicable here and, as the parties have raised genuine issues of material fact as to the nature and manner of repairs to the barges, the issue of mitigation of damages must be tried by a factfinder, in this instance the Court, upon a *complete* record.

Lost profits[17] are recoverable in maritime collision cases.

> Loss of profits or the use of a vessel pending repairs, commonly called "demurrage," is recoverable, provided there be an actual loss.

> Under the "restitutio in integrum" theory of recovery in marine collision cases, owners of an injured vessel are often entitled to recover for the loss of the vessel's use, while laid up for repairs, but the recovery of a loss of earnings has often depended upon the circumstances of the accident. Accordingly, "detention damage," as used in determining the damages allowed when a vessel is damaged in a collision, is the amount of profit loss during a period of detention. Demurrage is proper only when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty, and the amount of the award should be limited by the time required to complete necessary collision repairs. Accordingly, it is necessary that the vessel could have been profitably employed during the period of her detention, and probably would have been. However, a plaintiff seeking detention damages in an admiralty case need not prove a specific lost opportunity. Profits may reasonably be supposed to exist, and may be an item of damage, if a vessel was active in a ready market prior to a collision.

C.J.S. COLLIDE § 255; *see Charles Zubik & Sons, Inc. v. Ohio River Co.*, 208 F.Supp 71, 76 (W.D.Pa. 1962) (citing *The Conquerer*, 166 U.S. 110 (1896)).

While Plaintiff argues that all that needs to be shown is that the vessel was active in a ready market to maintain a claim for lost profits, and Defendant contends that specific lost profits must be proven, what is clear is that under either approach there are material issues of fact present. Accordingly, summary judgment is inappropriate as to Plaintiff's claim for lost profits.

---

17

The Court construes Plaintiff's claims for lost profits, loss of use, and lost earning capacity as a single claim for lost profits. The parties' arguments in their briefs contemplate only the elements of claims for lost profits. Furthermore, loss of use claims under maritime law generally refer to the loss of use of money used for repairs and is usually accounted for by pre-judgment interest awards. *In re Bankers Trust Co.*, 658 F.2d 103, 108 (3d Cir. 1981). Loss of earning capacity claims in maritime law typically refer to loss of wage earning capacity by seamen suffering personal injury or death while engaged in maritime activities. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533, n.8 (1983).

### D.  *Indemnification*

Count III of Plaintiff's Complaint advances a claim for indemnification.  "The general rule . . . is that a claim for indemnity does not accrue until the indemnitee's liability is fixed by a judgment against or payment by the indemnitee." *United New York Sandy Hook Pilots Ass'n v. Rodermond Indus., Inc.*, 394 F.2d 65, 75 (3d Cir. 1968).  Because Plaintiff has failed to establish that a judgment against it has been entered or a payment by it has been made, or even that any third party has advanced a claim against it, Plaintiff's claim for indemnification fails as a matter of law.

### E.  *Plaintiff's Motion for Summary Judgment*

Plaintiff contends that this Court should find Defendant liable as a matter of law because the bailment relationship that existed between Plaintiff and Defendant creates a presumption of fault on the part of Defendant, and Defendant has failed to rebut that presumption.  (Docket No. 33 at 5).  Defendant counters that summary judgment is inappropriate because genuine issues of material fact exist as to whether it was negligent.  (Docket No. 37 at 7).

As previously discussed, "[t]he operator of a fleeting facility as bailee has the responsibility of caring for a barge after it is committed to its custody." *Am. River Transp. Co. v. Paragon Marine Servs.*, 213 F. Supp. 2d 1035, 1059 (E.D. Mo. 2002)(citing *Comerica Molasses Corp. v. New York Tank Barge Corp.*, 314 U.S. 104, 110 (1941)).  Where a vessel breaks loose, there is a presumption that the bailee acted negligently.  *The Chickie*, 141 F.2d 80, 82 (3d Cir. 1944).  Where, as here, the bailment is for the mutual benefit of the parties, the bailee can rebut this presumption by demonstrating that it exercised ordinary care.  *See Consolidation Coal Co. v. United States Steel Corp.*, 364 F. Supp. 1071, 1074 (W.D. Pa. 1973)("When a bailment is for mutual benefit the bailee has the duty to use ordinary care.")(citing *Orrell v. Wilmington Iron Works*, 185 F.2d 181 (4th Cir.

1950)).

Determinations of negligence in admiralty cases are questions of fact. *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 576 (9th Cir. 1995)(quoting *Hasbro Industries, Inc. v. M/S St. Constantine*, 705 F.2d 339, 341 (9th Cir.), *cert. denied*, 464 U.S. 1013 (1983)); *see also Fireman's Fund Ins. Co. v. M/V Vignes*, 794 F.2d 1552, 1555 (11th Cir. 1986)(same). Here, Defendant has presented evidence that it did not act negligently and exercised due diligence in its attempts to ensure that the barges did not break free. (*See* Docket No. 37 at 4). Moreover, basic facts regarding Defendant's actions leading up to and on the day of the incident are disputed. For example, Plaintiff contends that Defendant did not properly configure the fleet, which Plaintiff asserts is evidence of Defendant's negligence. (Docket No. 33 at 7). However, Defendant denies that Plaintiff's description of the fleet configuration accurately depicts the actual conditions that existed on the day in question. (Docket No. 37 at 5). Thus, genuine issues of material fact exist as to whether Defendant acted negligently.

Plaintiff relies on *Monsanto Co. v. Edwards Towing Corp.*, 318 F. Supp. 13 (D. Mo. 1969) and *Am. River Transp. Co. v. Paragon Marine Servs.*, 213 F. Supp. 2d 1035, 1043 (E.D. Mo. 2002) in support of its motion for summary judgment. (Docket No. 33 at 6). However, Plaintiff's reliance on these cases is misplaced, as these cases support Defendant's argument that, in admiralty, determinations of negligence are questions of fact not properly decided at summary judgment. In both *Monsanto* and *American River*, the fleeting facilities in question were found to be negligent only *after* the respective courts conducted a bench trial. *American River*, 213 F. Supp. 2d at 1039; *Monsanto*, 318 F. Supp. at 15.

Furthermore, as there remain genuine issues of fact as to liability, Plaintiff's motion for summary judgment for prejudgment interest is premature. Accordingly, Plaintiff's Motion for

Summary Judgment (Docket No. 33) is denied.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Docket No. 33) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 34) is GRANTED as to Count III, and DENIED in all other respects.  An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

CC/ECF:    All counsel of record.
Date:       March 31, 2009