IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MON RIVER TOWING, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1499 |
| | ) |
| INDUSTRIAL TERMINAL & | ) |
| SALVAGE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**Introduction**

Mon River Towing, Inc. ("Plaintiff") brought this negligence suit against Industrial Terminal and Salvage Company ("Defendant)" seeking damages for an incident when a fleet of barges chartered by Plaintiff broke away from Defendant's fleeting facility. This opinion addresses the legal standard for determining what profits, if any, were lost by Plaintiff during the time its barges were out of service due to repair.

**Procedural Background**

The parties filed Motions for Summary Judgment on June 13, 2008. (Docket Nos. 33, 34). On March 31, 2009, the Court denied Plaintiff's motion, and granted, in part, and denied, in part, Defendant's motion. (Docket No. 57). The case then proceeded to a non-jury trial which began on July 27, 2009 and ended on July 31, 2009. (Docket No.104). Transcripts were prepared (Docket Nos. 110-114), and the parties have filed their proposed findings of fact and conclusions of law.

1

(Docket Nos. 121-23).

On September 16, 2009, after extensive discussion with the parties, the Court issued an Order Appointing a Special Master. (Docket No. 132). Specifically, it appointed Thomas Claassen, CPA, of Schneider Downs & Co., Inc., to act as Special Master to determine Plaintiff's lost profits, if any, between May 2, 2004, and October 15, 2004. *Id.*[1] The Order specified that the Special Master would consider the evidence of record from the trial, including selected documents submitted into evidence and trial transcripts, as well as the oral arguments of the parties. *Id.* It further provided that the Special Master is to complete a report of his findings on lost profits by January 4, 2010. *Id.* Oral argument was held before the Court and the Special Master on November 30, 2009, during which counsel presented their arguments for the proper calculation of lost profits in this matter. (Docket No. 133). The Court has ordered a transcript of the hearing.

This opinion is being issued to assist the Special Master in his determination by providing him guidance as to the legal standard for determining lost profits.

**Legal Standard**

In its Memorandum Opinion on the parties' summary judgment motions, the Court outlined the basis upon which a calculation for maritime lost profits are made in the Western District of Pennsylvania. (Docket No. 57 at 17-9). While the Court has considered the opinions of other circuit

---

[1] As the Court has expressed to the parties, this accounting question is the only one before Special Master Claassen. The Court will address mitigation and the extent of same in her opinion to be issued after the Special Master opines on the measure of lost profits and after the mediation before the Honorable Judge Benson.

courts as argued by the parties[2], the rulings in *The Conqueror*, 166 U.S. 110 (1896)*, Crain Brothers, Inc. v. Duquesne Slag Products Company*, 273 F. 3d. 948 (3d Cir. 1959), and *Charles Zubik & Sons v. Ohio River Co.,* 208 F. Supp 71 (W.D. Pa. 1962) provide the controlling law.[3]  (Docket No. 57 at 19).

> [T]he loss of profits or of the use of a vessel pending repairs, or other detention, arising from a collision or other maritime tort, and commonly spoken of as 'demurrage,' is a proper element of damage . . . however . . . demurrage will only be allowed when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty. . . . [T]wo things are absolutely necessary,-actual loss, and reasonable proof of the amount.

*The Conqueror*, 166 U.S. 110, 125 (internal quotations omitted).  The United States Supreme Court formulated this reasoning in *The Conqueror* based upon a line of cases wherein ships were removed

---

[2] The more relevant cases include: *Conagra, Inc. v. Inland River Towing Company*, 252 F. 3d. 979 (8th Cir. 2001) (Utilizing historical average earnings is a recognized method of determining loss of use damages.); *M/V Nicole Trahan v. Gulfgate Marine Transportation Company, Inc.*, 10 F. 3d. 1190 (5th Cir. 1994) (There is no need of proof of a particular lost opportunity where there is an active market for a vessel and profits may be reasonably supposed to have been lost.); *Dow Chemical Company v. M/V Roberta Tabor and M/V Sugarland etc., et al.*, 815 F. 2d 1037 (5th Cir. 1987) (Where plaintiff has extra barges in its possession that can adequately fill in for those removed from service, loss of barges for repairs, alone, is not sufficient justification for award of lost profits.); and *Cargill, Incorporated v. Taylor Towing Services, Inc.*, 642 F. 2d. 239 (8th Cir. 1981) (Award of anticipated profits requires proof of income and expenses prior to removal of vessels from service, and must be sufficient to remove such an award from the realm of conjecture.).

[3] In *Malley-Duff & Associates, Inc. v. Crown Life Insurance Company*, 731 F. 2d. 133 (3d Cir. 1984), the Court of Appeals for the Third Circuit determined a similar standard for non-admiralty cases involving lost profits that provides some guidance.  The court in *Malley-Duff* noted that "[W]hile the damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Malley-Duff*, 731 F. 2d. at 148.  While assumptions about values are allowed in calculating loss, the assumptions must be based upon sufficient factual support; a reasonable quantity of data must exist. *Id*. The Court further noted that many industries have respective formulas or rules for making calculations regarding the value of business, and those should be followed when determining loss. *Id*. at 149.

from the normal stream of commerce for repair. The ship in *The Conqueror* was itself a pleasure craft, but the Court used examples from cases involving the loss of use of commercial ships to form its opinion. *Id. passim*. The Supreme Court found that it is permissible to seek compensation for profits that could have been earned but for damage to the ship. The major issue in such cases is determining the compensation to be awarded, given the danger of pure conjecture such calculations may create.

The Supreme Court stated in *The Conqueror* that where the beneficial use of a vessel has been lost, the income that the ship would have earned is the gauge for lost profits. *The Conqueror*, 166 U.S. at 127. In *The Conqueror*, the Court specifies two measures for determining such damages, the market value and the value of use:

> [1] The best evidence of damage suffered by detention is the sum for which vessels of the same size and class can be chartered in the market.
>
> . . . .
>
> [2] In the absence of such a market value, the value of her use to her owner in the business in which she was engaged at the time of the collision is a proper basis for estimating damages for detention.

*Id*. Whichever measure is used, it must ultimately show that "profits have actually been, or may be reasonably supposed to have been, lost" and must allow "the amount of such profits [to be] proven with reasonable certainty." *Id.* at 125.

The preferred measure, market value for vessels of the same size and class, is not always available. As the Court notes, "this criterion cannot be often applied, as it is only in larger ports that there can be said to be a market price for the use of vessels." *Id*. at 127. However, "this can often

be accomplished with barges, but only occasionally with larger vessels." David J. Sharpe & Robert B. Acomb III, *Damages Recoverable in Collision and Stranding Cases*, DAMAGES RECOVERABLE IN MARITIME MATTERS 1, 5 (Robert B. Acomb, Jr. ed., 1984)

If no market value number is available, then damages are based on the value of use to the owner, which can be shown by the books of the owner providing the profits earned just prior to being taken out of service, or by witness testimony with strong factual support. *Id.* at 128. "Mere opinions," witness testimony on its own, is too speculative to be considered an accurate estimation. *Id.* at 127-128. To illustrate this point, in *The Conqueror*, the Supreme Court cited a case involving the ferryboat Cayuga, in which case the testimony of an experienced ferryman as to the charter value of the Cayuga was accepted by the Court as evidence for calculation of lost profits, because the testimony was backed by receipts the Cayuga had received before being damaged. *Id.* at 128. (citing *The Cayuga*, 2 Ben. 125, Fed. Cas. No. 2,537, *aff'd*, 14 Wall. 270).

The necessity of reasonable certainty in computing loss was reinforced by the Court of Appeals for the Third Circuit in *Crain Brothers*, which elucidated the requirement of a concrete showing of diminished profits. *Crain Brothers*, 273 F. 2d. at 950. In a remarkably similar case to the one before the Court, the plaintiff in *Crain Brothers* lost the use of several barges to repair. The Third Circuit stated that the applicable law in this area is that:

> Where, as here, demurrage is claimed for a ship used exclusively to transport cargo . . . the damage may be shown by the cost of a substitute or by proving the loss to the business of the shipowner by being deprived of the use of the ship in that business.

*Id.* at 950-951 (quoting *Sinclair Refining Co. v. The American Sun*, 188 F. 2d. 64, 66 (2d Cir. 1951)).

If substitute vessels are needed and obtained, the loss to the Plaintiff is in the amount of the added cost of chartering the new vessels to continue conducting business. *Id.* Otherwise, Plaintiff must make some "showing of diminished profits" that are attributable to the loss of the Plaintiff's vessels such as forfeited business, or increased costs of continuing business utilizing only the remaining vessels. *Id.* In *Crain Brothers*, no substitute vessels were obtained, and given the plaintiff's ability to use its own excess barges without added expense or loss of needed capacity, there was not sufficient proof of damages. *Id.* The plaintiffs in *Crain Brothers* needed to show more than loss of barges in service and customary charter rates for such barges. *Crain Brothers*, 273 F. 2d. at 950.

Finally, in *Zubik*, the court for the Western District of Pennsylvania provided more guidance as to what is needed to make a claim for lost profits. The party seeking lost profits must present evidence not only of the fees that could be expected from commercial use of its vessel, but also the labor and maintenance costs incident to regular operation of the vessel. *Zubik*, 208 F. Supp. at 76. Without production and transportation costs to subtract from plaintiff's alleged lost income, there is no way for the court to determine lost profits. *Id.* Citing *The Conqueror*, the court in *Zubik* reaffirmed the need to determine lost profits with reasonable certainty. *Id.* Further, the court in *Zubik* disregarded testimony provided by one of the parties in the case because there was not adequate factual support on the record. *Id.* Once again, bald assertions by a witness without factual support on the record is not sufficient for determining lost profits.

Since the Special Master, like any testifying expert, will rely on his "scientific, technical, or other specialized knowledge," he should demonstrate that his opinion "(1) . . . is based upon sufficient facts or data, (2) . . . is the product of reliable principles and methods, and (3) [that he] has

applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The Special Master's report need not necessarily meet the *Daubert* standard for admissibility. *See Simon v. Weissman*, 301 Fed. App'x. 107, 115-116 (3d Cir. 2008) (finding no error in the admission of an expert accountant); *United States v. Velasquez*, 64 F. 3d. 844 (3d Cir. 1995) ("The *Daubert* tests have been considered by some courts to be too stringent to employ in considering whether to admit the testimony of accountants."). But, it should be "based on reliable principles, methods, and evidence," and on the evidence of record, which may include "hearsay . . . of the kind normally employed by experts in the field" of accounting. *Simon v. Wiessman*, 301 Fed. App'x. at 116.

**Conclusion**

The Court has therefore determined that the opinions expressed in *The Conqueror*, *Crain Brothers*, and *Zubik* provide the controlling law with respect to lost profits in admiralty cases, and that these cases provide the Special Master with the appropriate guidelines for determining what lost profits, if any, were suffered by Plaintiff in this case.

To find lost profits, the Special Master must find that: (1) profits have actually been, or may be reasonably supposed to have been, lost; and (2) the amount of that loss can be determined with reasonable certainty.

The amount of loss can be shown either through (1) market value or (2) value of use. (Here, it appears that Plaintiff is proceeding by way of the latter theory.) Value of use can be illustrated by showing (a) the profits earned by the vessels just prior the loss of the vessels, (b) the loss to the business of the Plaintiff by being deprived of the use of the vessels in that business, and/or (c) the cost to the Plaintiff of operating substitute vessels or utilizing the existing fleet to do the work of the

lost vessels. All values must be determined with reasonable certainty, by factually-supported, not merely speculative evidence of the income and costs normally attributable to the damaged vessels, and they must be arrived at by application of reliable principles and methods of accounting.

<u>s/ Nora Barry Fischer</u>
Nora Barry Fischer
United States District Judge

Dated: December 4, 2009
cc/ecf: All counsel of record.